HARRISON LAW CENTER,
A Law Corporation
WILLIAM A. HARRISON #2948
American Savings Bank Tower
1001 Bishop Street, Suite 2828
Honolulu, Hawai`i 96813
Telephone Number: (808) 523-7041
Facsimile Number: (808) 538-7579
E-Mail: william@harrisonlawcenter.com

Attorney for Defendant
MICHAEL VAITU`ULALA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>Vs.<br><br>MICHAEL VAITU`ULALA,<br><br>Defendant. | CASE NO. 26-00746-KJM<br><br>**REPLY TO UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO UNSEAL AND DISCLOSE THE *EX PARTE*, IN CAMERA MATERIALS RELIED UPON BY THE COURT; CERTIFICATE OF SERVICE** |

**REPLY TO UNITED STATES RESPONSE TO DEFENDANT'S MOTION TO UNSEAL AND DISCLOSE THE *EX PARTE*, IN-CAMERA MATERIALS RELIED UPON BY THE COURT**

## I. PRELIMINARY STATEMENT

The Government's Response confirms the very problem the Motion identifies: Michael Vaitu`ulala was ordered detained on the strength of a secret submission that he has never been permitted to see, and the Government now asks

this Court to keep it that way. The Response does not dispute that it filed a supplemental submission *ex parte* and under seal, that the Court reviewed it, or that the Court excluded the defense from it entirely. Its position reduces to a single proposition — that in this "extraordinary case" the Court may deny liberty on evidence the accused cannot know, contest, or rebut. That is not the law of this Circuit, it is not the law of the Bail Reform Act, and it is not what due process permits.

Three points dispose of the Response.

First, the record refutes the Government's new claim that the Court did not rely "in large part" on the sealed materials; the transcript shows the opposite. Second, the authorities the Government marshals do not support secrecy — its lead case was vacated as moot and is no authority at all, and the balance of its cases either require disclosure or address an entirely different right. Third, even under the Government's own framework, it loses: it concedes it will not disclose the "gist or substance" of its submission, and it employed none of the safeguards that the cases it cites treat as the price of proceeding *ex parte*.

The relief sought remains narrow. Mr. Vaitu`ulala does not seek the identities of confidential sources or unfettered access to law-enforcement files. He asks to be told the substance of the allegations used to jail him, subject to any

reasonable protective measure — or, failing that, that the sealed information be excluded from the detention calculus.

## II. ARGUMENT

### A. The Record Forecloses the Government's Claim That the Court Did Not Rely on the Sealed Submission.

The Government's central factual assertion — that the Court's findings rested on the public complaint and argument, "not, in large part, on the material reviewed by the court in camera" (Gov't Resp. at 4.) — cannot be reconciled with the transcript the Government itself attached.

At the outset of the hearing, the Court stated on the record that it had "reviewed and signed off on the Government's motion to seal the *ex parte* submission," that "those have been filed," and — turning to defense counsel — "[o]f course, Mr. Singh, you're not privy to the supplemental, but I have reviewed that as well." (Tr. at 3.) The Court thus confirmed three things: it received the sealed submission, it read it, and the defense was shut out of it.

The Court then repeatedly framed its decision as one driven by "information." It told Mr. Vaitu`ulala that "[t]he only thing that I'm relying on in my decision today is the *information* that I have before me." (Tr. at 9.) [emphasis added]. It closed by explaining that the ruling "ultimately is a matter of information," and that "[t]he information I have before me tells me that I am not

comfortable releasing you." (Tr. at 14.) The "information . . . before me" necessarily included the sealed submission the Court had just described reviewing.

Most tellingly, the Court rejected the Pretrial Services recommendation of release precisely because, in its view, Pretrial Services "do not take into account certain types of information that the Court is statutorily required to consider." (Tr. at 13.) Pretrial Services recommended release on a $50,000 unsecured bond with restrictive conditions (PSR at 4.), having concluded that "there are restrictive conditions that can be fashioned to mitigate the risks of nonappearance and danger to the community" (PSR at 4.). The "certain types of information" that Pretrial Services lacked, but the Court possessed, is the sealed *ex parte* submission. And when the Court directed the Government to prepare the detention order, it authorized that order to "incorporate information from your filing" (Tr. at 15.) — the same filing that included the sealed supplement.

The Government cannot have it both ways. Its Motion to Seal represented that the sealed material was so significant that its disclosure "may result in the obstruction of justice, lead to the destruction of evidence or tampering of witnesses and jeopardize the safety of confidential sources" (Mot. to Seal, ECF No. 14.) Having submitted the material as decisive, the Government cannot now recast it as immaterial surplusage. Either the sealed submission mattered to the detention

decision — in which case due process entitles Mr. Vaitu`ulala to its substance — or it did not, in which case there is no reason it cannot be excluded and the detention decision revisited on the open record.

**B. The Defendant Was Given No Meaningful Opportunity to Respond.**

The Government argues that Mr. Vaitu`ulala had adequate notice because the sealed supplement "related to the issue of obstruction of justice" and he was free to argue his family ties and lack of dangerousness (Gov't Resp. at 6.). That misunderstands the constitutional problem. Notice that a secret submission exists, and that it concerns "obstruction," is not notice of its substance. One cannot rebut allegations one has never seen.

The transcript proves the point. Defense counsel told the Court that "the Government's making all kind of allegations. It's hard for us to say anything because we don't have anything other than what is indicated in the criminal complaint." (Tr. at 7.) Counsel of record confirms the same in his declaration: the defense was never informed of "the nature or subject matter of any such undisclosed allegations," and thus "had no meaningful opportunity to investigate, rebut, explain, or otherwise respond." (Harrison Decl. ¶¶ 3-4.) A generalized invitation to argue "danger" in the abstract is not the "opportunity to meet" the case that due process demands.

### C. The Government's Lead Authorities Do Not Support Secret Detention Evidence.

The Response is built on a foundation that will not bear weight.

**1. Cardenas is not authority.** The Government leans heavily on *United States v. Cardenas*, 784 F.2d 937, 938 (9th Cir. 1986) (per curiam), as the Ninth Circuit's "instructive," "published" endorsement of in camera review (Gov't Resp. at 7.). But that opinion was vacated. The Ninth Circuit expressly ordered that "[t]he opinion of the court, filed March 7, 1986, 784 F.2d 937 (9th Cir. 1986), is hereby vacated," holding the bail appeal moot in light of the defendant's conviction. *United States v. Cardenas*, 792 F.2d 906, 906 (9th Cir. 1986) (order). A vacated opinion is a legal nullity; it "reflect[s]" nothing about Ninth Circuit law and supplies no support for the Government's position. Even the Government's own persuasive authority recognized as much — *United States v. Terrones*, 712 F. Supp. 786, 791 n.2 (S.D. Cal. 1989), noted that *Cardenas* was "later vacated on mootness grounds." The Government's assertion that *Cardenas* "provides Ninth Circuit support for the constitutional permissibility" of its procedure (Gov't Resp. at 13.) is simply wrong.

**2. *Accetturo* cuts against the Government.** The Government cites *United States v. Accetturo*, 783 F.2d 382, 391 (3d Cir. 1986), but that decision held that "reliance on *in camera* evidence is, as a general matter, inconsistent with the

Bail Reform Act's procedural protections," because the Act guarantees the defendant "the right to know what information is being submitted to the decisionmaker and the opportunity to challenge the reliability of the government's sources." The Third Circuit concluded that the circumstances did not justify the use of *in camera* evidence and remanded for "individual decisions that do not rely on *in camera* evidence." *Id.* at 391–92. It permitted *ex parte* submissions only "when there has been a most compelling need and no alternative means of meeting that need" — and expressly found that standard not met. Critically, *Accetturo* explained *why* the necessity claim usually fails: because the Bail Reform Act permits hearsay, "the government will usually not need to present its case through *in camera* materials in order to protect potential witnesses," since an agent can testify to source information in open court while declining to identify the source. *See id.* at 391. That is precisely the less-restrictive path the Government ignored here.

**3. *Terrones* proves the defense's point, not the Government's.**

*Terrones* did permit *in camera* evidence — but only in "rare and unusual circumstances," and only after imposing a battery of safeguards the Government did not remotely replicate. *Terrones*, 712 F. Supp. at 790. There, the magistrate personally interviewed the confidential source; defense counsel was invited to submit questions that were then asked in camera; the interview was transcribed;

the court made express findings on reliability, materiality, non-disclosure, and the absence of any alternative source; those findings were appended under seal for appellate review; and the defendant received a *de novo* hearing. *Id.* at 788–90, 794. Nothing in this record reflects any of those protections. *Terrones* is not authority for what happened here; it is a catalogue of everything that did not.

**4. *Acevedo-Ramos* is dicta, and it requires the "gist."**

The First Circuit's discussion of *in camera* review in *United States v. Acevedo-Ramos*, 755 F.2d 203, 209 (1st Cir. 1985), was dicta — the defendant never requested such review, and the court affirmed on other grounds. And even that dicta was doubly limited: it contemplates *in camera* review only "at defendant's request," as a *check* the defendant may invoke, and only "where the defendant is apprised of the gist of the evidence through government testimony at the hearing." *Id.* at 209. Here the Government seeks the opposite — *ex parte* submission over the defendant's objection, with no disclosure of the gist at all.

**5. The Government's investigation-secrecy cases concern a different right.**

*Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 (9th Cir. 1989), and *Forbes Media LLC v. United States*, 61 F.4th 1072, (9th Cir. 2023), address whether the *press and public* have a First Amendment right of access to sealed warrant and investigative materials during an ongoing investigation. *Times Mirror* framed the

question as whether "the public has a qualified right of access to search warrants and supporting affidavits," and held that "members of the public have no right of access to search warrant materials while a pre-indictment investigation is under way." *Times Mirror*, 873 F.2d at 1211. Forbes *Media* likewise decided whether "the First Amendment or the common law creates a right of *public* access" to All Writs Act assistance proceedings. Neither case concerns a criminal defendant's Fifth Amendment right to see the evidence used to deprive *him* of his liberty. That the public may be denied access to an ongoing investigation says nothing about whether the accused may be jailed on evidence withheld from him.

### D. *Abuhamra* States the Governing Due Process Rule, and the Ninth Circuit Has Embraced It.

The controlling principle is the one the Government tries hardest to escape. In *United States v. Abuhamra*, 389 F.3d 309, 314 (2d Cir. 2004), the Second Circuit held that *ex parte*, in camera submissions "should generally not be entertained because they compromise a defendant's due process right to a fair hearing on his bail application as well as the public's interest in open criminal proceedings." The court grounded that holding in the bedrock principle, drawn from Justice Frankfurter's concurrence in *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170–72 (1951) (Frankfurter, J., concurring), that "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights," and that

due process requires notice of the case against the person "and opportunity to meet it." *Abuhamra*, 389 F.3d at 322.

The Government insists *Abuhamra*'s "viability in the Ninth Circuit is not clear" (Gov't Resp. at 10.). It is clear. The Ninth Circuit has described *Abuhamra* as "a criminal case holding that bail cannot be denied on the basis of information kept secret from the defendant." *Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160, 1167 (9th Cir. 2011). That is the Ninth Circuit's own description of the very holding the Government resists.

The Government's reliance on *United States v. Bibbs*, 488 F. Supp. 2d 925, (N.D. Cal. 2007), is misplaced because *Bibbs* answers a different question. *Bibbs* held only that the *Sixth Amendment* Confrontation Clause does not apply at a detention hearing, reasoning under *Crawford* that such a hearing is not a "criminal prosecution." Mr. Vaitu`ulala does not invoke the Confrontation Clause. He invokes the Fifth Amendment's guarantee of notice and a fair hearing — the right *Abuhamra* itself treated as distinct, framing the defendant's confrontation and counsel claims as "derivative of, rather than distinct from, his inadequate notice complaint." *Abuhamra*, 389 F.3d at 318. Indeed, *Bibbs* itself acknowledged that *Abuhamra* held that the District Court's reliance on information it received *ex-parte* and in camera to deny bail violated defendant's due process rights, and that the

Second Circuit "did not reach the Sixth Amendment confrontation clause." *Bibbs supra.* As such, leaves the due process question entirely open — and *Abuhamra* answers it.

Older authority is to the same effect. In *United States v. Wind*, 527 F.2d 672, 676 (6th Cir. 1975), the Sixth Circuit held that a court's reliance "to any extent" on *in camera* testimony from which the defendant and counsel were excluded "was error," and "disapprove[d] of the practice as being inconsistent with the right to a hearing and the opportunity to refute." The power to detain to protect witnesses may be exercised "only after a hearing which affords the defendant an ample opportunity to refute the charges." *Id.* at 675 (quoting *United States v. Gilbert*, 425 F.2d 490, 491–92 (D.C. Cir. 1969)).

### E. The Bail Reform Act's Tolerance of Hearsay and Proffer Does Not Authorize Wholly Undisclosed Evidence.

The Government conflates two very different things. Section 3142(f)'s relaxation of the trial rules of evidence — permitting proffer and hearsay (Gov't Resp. at 5.) — is not license to submit evidence the defendant never sees. Hearsay presented in open court is still disclosed: the defendant hears the allegation and can respond to it, test its reliability, and offer contrary proof. That is exactly the distinction *Accetturo* drew — because the Act allows the government to proceed by

hearsay in open court, it "will usually not need to present its case through *in camera* materials." *Accetturo*, 783 F.2d at 391.

*Salerno* itself confirms the point. In *United States v. Salerno*, 481 U.S. 739, 750 (1987), the Supreme Court upheld the Bail Reform Act against constitutional challenge precisely because detention follows "a full-blown adversary hearing" in which "the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community." The Act affords the arrestee the right to "testify and present witnesses in his behalf" and to "cross-examine other witnesses appearing at the hearing." *Id.* at 742. "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception," sustained only because "numerous procedural safeguards . . . attend this adversary hearing." *Id.* at 755. A submission delivered to the judge in secret is the antithesis of that adversary process. Congress's decision to admit hearsay did not silently authorize the Star Chamber.

### F. Even Under the Government's Own Test, Total Secrecy Fails; *Mathews* Requires Disclosure or an Adequate Substitute.

The Government proposes a three-part test and invokes the *Waller v. Georgia*, 467 U.S. 39, 48 (1984), factors (Gov't Resp. at 12; *id.* at 10 n.1). But it concedes the dispositive point. It admits it will not provide "the 'gist or substance' of the government's opposition" — the "second prerequisite" of *Abuhamra* —

because doing so "would jeopardize the very interests the government is seeking to protect." (Gov't Resp. at 10.) That concession is fatal. *Abuhamra* borrowed the *Waller* factors but held them "inadequate to safeguard a defendant's basic due process rights." It therefore imposed a separate, independent requirement: "disclosure to the defendant of the gist or substance of the reasons advanced in the government's sealed submission so that the defendant may fairly meet this challenge." *Abuhamra*, 389 F.3d at 330. Where, as here, the opposition is "presented entirely *ex parte,* due process does not permit total secrecy. The government must either apprise the defendant of the substance of its sealed submission or forego the court's consideration of the evidence." *Id.* at 331. The Government's refusal to disclose the substance thus does not satisfy its test — it fails it, and the remedy *Abuhamra* prescribes is exclusion.

The result is the same under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which *Abuhamra* applied to post verdict bail determinations. *See Abuhamra*, 389 F.3d at 318. The private interest — freedom from physical confinement — is "accorded the utmost weight," and the use of secret evidence sharply increases the risk of erroneous deprivation because it "creates a one-sided process by which the protections of our adversarial system are rendered impotent." *Kiareldeen v. Reno*, 71 F. Supp. 2d 402, 413 (D.N.J. 1999). On facts closely analogous to these,

*Kiareldeen* held that the government's reliance on evidence "presented *ex parte* and *in camera*" in immigration detention proceedings "patently failed the *Mathews* test of constitutional sufficiency" and violated due process. *Id.* at 407, 413.

The Government's assertion that "a summary or redaction would not be sufficient" (Gov't Resp. at 11.) is a conclusion, not a showing. *Abuhamra* requires the Government to "demonstrate that it proposes to put under seal only those materials . . . that would genuinely be compromised by disclosure," that "[e]very reasonable effort at redaction" has been explored, and that "there are no alternative means" of conveying the substance to the defense. *Abuhamra*, 389 F.3d at 329. The Motion identified a range of less-restrictive measures — disclosure to counsel under a protective order, a factual summary, redaction of identifying detail, defense-submitted questions for any confidential source, and a limited on-the-record in camera inquiry (Def.'s Mot. at 11.). The Government has not shown that each of these would fail; it has simply asserted that secrecy is easier. That is not the demonstration the law requires.

That the balance favors disclosure is reinforced by the detention order itself. The Court checked only two boxes — that the weight of the evidence is strong and that release poses a serious danger — and declined to check the boxes for lack of community ties, lack of stable residence or employment, criminal history, prior

failure to appear, history of violence, or prior evasion of law enforcement. The Court expressly stated it was "not really as concerned about risk of flight." (Tr. at 6.) With the ordinary indicators of dangerousness and flight absent — and with Mr. Vaitu`ulala having surrendered his passport and firearms, offered his wife as third-party custodian, and presented a documented, decades-deep support network on Maui (Tr. at 7; PSR at 2.) — the detention decision turned on the undisclosed "information" the Court weighed against release. That is exactly the circumstance in which the risk of error is greatest and disclosure matters most.

## III. CONCLUSION

The Government asks this Court to sustain a detention order built on evidence the accused has never seen, on the authority of a vacated opinion and cases that in fact require disclosure. Due process and the Bail Reform Act do not permit it. Defendant Michael Vaitu`ulala respectfully requests that the Court:

1. Determine on the record whether it considered any substantive information, allegations, proffers, affidavits, reports, or other materials presented *ex parte* or in camera and not disclosed to the defense;

2. Order the Government to disclose to defense counsel the substance of that information, subject to reasonable protective measures;

3. Alternatively, require the Government to establish, on the record and with particularized findings, the nature and materiality of the information, the specific harm disclosure would cause, and why no protective order, summary, redaction, or other less-restrictive alternative would suffice; and

4. Exclude from the detention analysis any undisclosed information for which adequate procedural safeguards cannot be provided, and grant such other relief as the Court deems just.

DATED: Honolulu, Hawaii, September 23, 2026.

/s/ William A. Harrison
WILLIAM A. HARRISON
Attorney for Defendant
MICHAEL VAITU`ULALA

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was duly served by CM/ECF on the following at their last known addresses:

JEANNETTE S. GRAVISS, ESQ.
Assistant U.S. Attorney
300 Ala Moana Boulevard, Ste. 6-100
Honolulu, Hawaii 96850
Attorney for Plaintiff United States of America

DATED: Honolulu, Hawaii, September 23, 2026.

/s/ William A. Harrison
WILLIAM A. HARRISON
Attorney for Defendant
MICHAEL VAITU`ULALA